**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| YELITZA COTTO, | ) CASE NO. 1:16-cv-01646 |
| | ) |
| Plaintiff, | ) JUDGE DAN AARON POLSTER |
| | ) |
| v. | ) MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) |
| NANCY A. BERRYHILL, | ) |
| *Acting Comm'r of Social Security*, | ) **REPORT AND RECOMMENDATION** |
| | ) |
| Defendant. | ) |

Plaintiff, Yelitza Cotto (hereinafter "Plaintiff"), challenges the final decision of Defendant Nancy A. Berryhill, Acting Commissioner of Social Security (hereinafter "Commissioner"), denying her applications for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. ("Act").  This court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation.  For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be REVERSED and REMANDED for proceedings consistent with this opinion.

## I. Procedural History

On November 27, 2012, Plaintiff filed her applications for POD, DIB, and SSI, alleging a disability onset date of October 26, 2012. (Transcript ("Tr.") 176-181). The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 108-134). Plaintiff participated in the hearing on October 28, 2014, was represented by counsel, and testified. (Tr. 34-58). A vocational expert ("VE") also participated and testified. (*Id.*) On November 20, 2014, the ALJ found Plaintiff not disabled. (Tr. 24). On May 3, 2016, the Appeals Council declined to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1-3). On June 28, 2016, Plaintiff filed a complaint challenging the Commissioner's final decision. (R. 1). The parties have completed briefing in this case. (R. 10 & 12).

Plaintiff asserts the following assignments of error: (1) the ALJ erred by disregarding the opinions of Plaintiff's treating physician, and (2) the ALJ erred by failing to perform a proper pain and symptom analysis. (R. 10).

## II. Evidence

### A. Relevant Medical Evidence[1]

#### 1. Treatment Records

In July of 2013, Plaintiff was seen by Dr. Louise A. Sieben, M.D., who noted Plaintiff had "Normal muscle bulk and tone[,] Mild to moderate tenderness of her upper arms, forearms, thighs. [T]rigger points positive. (Tr. 597). Plaintiff complained of intermittent vertigo and moderate to severe muscle aches in extremities. (Tr. 596).

---

[1] The recitation of the evidence is not intended to be exhaustive. Because the court finds the first assignment of error concerning the opinions of a treating source, Louise A. Sieben, M.D., dispositive, the court includes a limited recitation of the evidence.

2

On July 24, 2013, Plaintiff returned to Dr. Sieben with complaints of back pain, which she identified as a new problem. (Tr.608-610). Dr. Sieben diagnosed Plaintiff with back strain and chronic back pain. (Tr. 610).

In August of 2013, Plaintiff returned to Dr. Sieben, complaining of pain in her back, neck, and leg muscles, as well as muscle stiffness and fatigue. (Tr. 685). Dr. Sieben noted that Plaintiff "continues to perform her activities of daily living and also take[s] care of her children." *Id.* Dr. Sieben diagnosed major depression, low back pain, thoracic sprain, neck muscle spasm, and myopia, noting that she suspected fibromyalgia. (Tr. 686).

In September of 2013, Plaintiff was again seen by Dr. Sieben, and she continued to complain of pain in her back, shoulders, and extremities. (Tr. 694). Plaintiff reported that she had been seen by "quite a few" specialists, including a Dr. Magrey in rheumatology. *Id.* Dr. Sieben diagnosed fibromyalgia and recommended Plaintiff return to rheumatology for further fibromyalgia treatment, and Plaintiff was to inquire whether physical therapy might be an option. *Id.*

In November of 2013, Plaintiff was seen by rheumatologist Sobia Hassan, M.D., who diagnosed Plaintiff with fibromyalgia with "strong psychological component to pain." (Tr. 729). Dr. Hassan recommended that Plaintiff try new medication and "start aerobic activity and stretch every day at the very least." *Id.* Dr. Hassan opined that Plaintiff may benefit from physical therapy and behavioral modification. *Id.*

Also in November of 2013, Plaintiff was seen by physical medicine and rehabilitation specialist King Ogbogu, M.D. (Tr, 736-741). It was noted that Plaintiff had been referred to physical therapy multiple times, but had not attended due to pain, and also had "not followed through with any recommendations such as stretching or aerobic exercise. (Tr. 737). Dr.

3

Ogbogu's impression was "likely fibromyalgia," and "[p]ossible shoulder impingement but exam difficult to perform as pt was very tense and actively resisting maneuvering." (R. 741).

During the above visit, Plaintiff was also seen by Daniel Malkamaki, M.D. (Tr. 741-742). He also noted that Plaintiff had been referred to physical therapy in the past, but that she failed to follow through due to "too much pain." (Tr. 741). Dr. Malkamaki recommended that Plaintiff not be prescribed opioids for her condition "due to the fact that she has significant pain/fear of movement [and an] 'avoidance mentality' toward her MSK ('musculoskeletal') symptoms." (Tr. 742).

In December of 2013, Plaintiff was seen by Dr. Sieben complaining of generalized muscle aches and pains. (Tr. 747). She recommended that Plaintiff continue with the exercises as ordered by Dr. Malkamaki, continue current medications, and follow up with rheumatology. (Tr. 747-748).

In January of 2014, Plaintiff presented to Dr. Malkamaki, reporting that her symptoms were the same, though she reported another pinched nerve in her neck. (Tr. 752). Plaintiff reported that she was not performing the prescribed exercises because they made her arms shake, to which Dr. Malkamaki responded "that's the point exactly." *Id*.

**2. Medical Opinions Concerning Plaintiff's Functional Limitations**

On February 18, 2013, Louise A. Sieben, M.D., wrote a letter stating as follows:

> Yelitza Cotto has been under my care for fibromyalgia and depression. She is participating in counseling and attending physical therapy. Her symptoms are not improving despite medication. However, her pain level, poor concentration, and depressed mood prevents her from meaningful work. She is unable to tolerate employment for 32 hours per week. Based on continued symptoms, I believe Ms. Cotto is unable to work at this time….

4

(Tr. 673).

On February 26, 2013, Dr. Sieben completed a check-the-box form concerning Plaintiff's "Ability To Participate." (Tr. 678-679). Dr. Sieben indicated that Plaintiff could sit, see, hear, or speak no more than two hours in an 8-hour workday. (Tr. 678). She further indicated that Plaintiff had no ability to stand, walk, climb, kneel, squat, bend, stoop, push/pull, lift/carry, or operate a keyboard in an 8-hour workday. *Id*. With respect to mental abilities, Dr. Sieben opined as follows: Plaintiff was *mildly* impaired in her ability to interact with others, maintain socially acceptable behavior, maintain basic standards of hygiene and grooming, and be aware of normal hazards and take precautions; *moderately* impaired in her ability to remember locations and work procedures, understand and remember short simple instructions, maintain attention for extended periods, sustain routine without frequent supervision, and make simple work-related decisions; and, *markedly* impaired in her ability to perform at a consistent pace. (Tr. 678-679). The opinion did not set forth any requested information concerning Plaintiff's diagnoses, medications, functional limitations, or prescribed treatment. (Tr. 678). Dr. Sieben indicated that Plaintiff's impairments were expected to last 12 months or more. (Tr. 679).

On March 21, 2014, Dr. Sieben completed a Medical Source Statement concerning Plaintiff's physical capabilities. (Tr. 783-784). Dr. Sieben indicated that Plaintiff, in an eight-hour workday, could lift/carry up to 20 pounds occasionally and five pounds frequently; stand/walk for a total of two hours in thirty minute increments; sit for a total of four hours in one-hour increments; stoop and crouch occasionally; and, rarely climb, balance, kneel, or crawl. (Tr. 783). In addition, Dr. Sieben opined that Plaintiff could occasionally perform fine manipulation; rarely reach, push/pull, or perform gross manipulation; and that Plaintiff's impairments affected her ability to be around heights and moving machinery. (Tr. 784). Dr. Sieben opined that Plaintiff needed to alternate

5

between sitting, standing, and walking at will. *Id*.   She characterized Plaintiff's pain as severe, indicating that it would interfere with concentration, take Plaintifff off task, and cause absenteeism. *Id*.   Dr. Sieben indicated that Plaintiff did not need to elevate her legs, but would require additional unscheduled breaks of two hours. *Id*.   Dr. Sieben noted that Plaintiff had not been prescribed a breathing machine, oxygen, or a wheelchair, and did not respond as to whether Plaintiff had been prescribed a cane, walker, brace, or TENS unit. *Id*.

On the same date, Dr. Sieben also completed another "Ability To Participate" form indicating that Plaintiff could walk, sit, stand, climb stairs/ladders, kneel/squat, bend/stoop, push/pull, lift/carry, and operate a keyboard for two hours in an eight-hour workday. (Tr. 785-786).   Seeing, hearing, and speaking were limited to four hours. (Tr. 785).   Dr. Sieben attributed these limitations to Plaintiff's severe pain, tingling and trembling. *Id*.   With respect to mental abilities, Dr. Sieben opined as follows: Plaintiff was *mildly* impaired in her ability to be aware of normal hazards and take precautions and maintain basic standards of hygiene and grooming; *moderately* impaired in her ability to interact with others, maintain socially acceptable behavior, remember locations and work procedures, understand and remember short simple instructions, maintain attention for extended periods, sustain routine without frequent supervision, perform at a consistent pace, and make simple work-related decisions. (Tr. 785-786).   She had no marked limitations. *Id*.   Dr. Sieben indicated that Plaintiff's impairments were expected to last between 6-11 months. (Tr. 786).

**B.  Relevant Hearing Testimony**

At the October 28, 2014 hearing, Plaintiff testified as follows:

- She completed the eighth grade. (Tr. 39).   She can read and write. (Tr. 40).   She stated she could not perform simple arithmetic despite having worked as a bank teller. *Id*.

6

- She had previous work as a bank teller, hospital housekeeper, and in customer service. (Tr. 40).

- On the physical side, her ability to perform activities is limited by pain, specifically by pain in her shoulders, legs, and lower back. She also identified migraines and restless leg syndrome as contributing to her pain. She rated her pain as ten out of ten. (Tr. 41, 50). She took several medications, which only helped sometimes. She was unaware of any side effects. She said physical therapy "sparks up" her pain. She does not use a cane, crutches, or a TENS unit. She has not had any operations to alieve her pain. (Tr. 42). Her migraines occur every few days and usually last all day. (Tr. 49). She copes by taking medications and laying down. (tr. 49).

- Her primary physician is Louise Sieben, whom she sees monthly. (Tr. 42).

- She can walk for a half hour and stand for twenty minutes, but could not bend, stoop or squat. She could lift a gallon of milk, but could not lift more than ten pounds. (Tr. 43-44). She could sit for thirty minutes at a time. (Tr. 44).

- On the mental side, she had memory loss, depression, crying spells, and anger. (Tr. 44)

- She sometimes watches television, and uses the computer maybe once or twice a week. (Tr. 44).

- She has problems with crowds of a 100 people or more, and cannot deal with strangers. (Tr. 45).

- She smokes a pack of cigarettes per day, but does not drink alcohol. (Tr. 45).

- She has been prescribed Seroquel, which helps her sleep six hours a night. (Tr. 47).

- She can bathe and dress by herself. She cooks and performs other household chores such as dusting, sweeping, vacuuming, and laundry—the latter with her children's help. She goes shopping as well. (Tr. 47). She can clean for thirty minutes before she has to stop. (Tr. 49). She needs to rest for two hours before she can resume cleaning. (Tr. 49).

- She sees a psychiatrist monthly, who has prescribed a lot of medications for her. (Tr. 47-48).

- On a typical day, she takes her son to school and homeschools her daughter. She also does a little cooking and cleaning. (Tr. 48).

- She visits her cousin, no longer has any hobbies, and does not attend church, a lodge, or clubs. (Tr. 48).

The VE testified that Plaintiff's past work could be classified as follows: housekeeper,

Dictionary of Occupational Titles ("DICOT") 323.687-010, medium exertional with an SVP of 2; and, teller, DICOT 211.362-018, light exertional with an SVP of 5. (Tr, 53-64). The ALJ posed the following hypothetical question to the VE:

> I'm going to ask you to assume an individual who is 36-years-old, will soon be 37. Has an eighth grade education, but can read and write simple English, perform simple arithmetic. Has a work background which you testified. This individual is limited to work of light exertional requirements, but had additional non-exertional limitations, specifically, no climbing of ladders, ropes, or scaffolds. Occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling. No exposure to hazards by which I mean to include heights, machinery, commercial driving. And mental limitation that she perform simple routine tasks in a low stress environment, specifically, no fast pace, strict quotas, or frequent duty changes involving superficial interpersonal interactions. Could this individual perform her past work?

(Tr. 54).

The VE testified that such an individual could not perform Plaintiff's past relevant work. (Tr. 54). Nevertheless, the ALJ identified the following jobs, as representative examples, that such an individual could perform: cleaner, DICOT 323.687-014, light with an SVP of 2 (383,000 jobs nationally, 11,000 in Ohio); laundry worker, DICOT 361.687-026, light with an SVP of 2 (87,000 jobs nationally, 3,400 in Ohio); and, inspector, DICOT 569.687-022, light with an SVP of 2 (131,000 jobs nationally, 6,500 in Ohio). (Tr. 54-55).

The ALJ posed a second hypothetical to the VE:

> For the second hypothetical, I'm going to ask you to assume the same individual, age, education, work background, and same residual functional capacity as provided to you previously, but with the additional limitation that due to symptoms and medically determinable impairments, this individual get off task at least 20 percent of the time. Could this individual perform jobs that exist in significant numbers in the economy?

(Tr. 55).

The VE responded in the negative. (Tr. 55). In response to questions from Plaintiff's

8

counsel, the VE testified that altering the first hypothetical to including missing two or more days per month would result in no available jobs. (Tr. 56). Breaks lasting two hours on a regular basis would also preclude any work. *Id*.

### III. Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 404.1505 & 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); 404.1509 and 416.909(a).

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that she suffers from a medically determinable "severe impairment" or combination of impairments in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits ... physical or mental ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment (or combination of impairments) that is expected to last for at least twelve months, and the impairment(s) meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment(s)

9

does not prevent her from doing past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment(s) does prevent her from doing past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g) and 416.920(g), 404.1560(c).

### IV. Summary of the ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2016.

2. The claimant has not engaged in substantial gainful activity since October 26, 2012, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971*et seq.*).

3. The claimant has the following severe impairments: fibromyalgia, psychogenic pain disorder, generalized anxiety disorder, bipolar disorder, history of headaches, and history of vertigo (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity (20 CFR 404.1545 and 416.945) to perform a reduced range of light work with the following limitations (*see generally* 20 C.F.R. § 404.1567(b) and 416.967(b)): she is limited to no climbing of ladders, ropes, or scaffolds; occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; no exposure to hazards (heights, machinery, commercial driving); and mentally, she can perform simple, routine, tasks in a low-stress environment (i.e., no fast pace, strict quotas, or frequent duty changes) involving superficial interpersonal interactions (20 CFR 404.1569a and 416.969a).

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on December \*\*, 1977 and was 34 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

> 8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).
>
> 9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from October 26, 2012, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 13-24).

## V. Law and Analysis

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. (*Id.*) However, the court does not review the evidence de novo, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence

11

is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

**B. Plaintiff's Assignments of Error**

In the first assignment of error, Plaintiff asserts that the ALJ erred by wholly disregarding the opinions of her treating physician, Dr. Sieben. (R. 10). Conversely, the Commissioners avers that the ALJ reasonably weighed the opinion evidence from Dr. Sieben, whom the Commissioner does not challenge as constituting a treating source. (R. 12).

"Provided that they are based on sufficient medical data, 'the medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference.'" *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002) (quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985)). In other words, "[a]n ALJ must give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in the case record.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (*quoting* 20 C.F.R. § 404.1527(d)(2)). If an ALJ does not give a treating source's opinion controlling weight, then the ALJ must give "good reasons" for doing so that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *See Wilson*, 378 F.3d at 544 (*quoting* Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *5). The "clear elaboration requirement" is "imposed explicitly by the regulations," *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 400 (6th Cir. 2008), and its purpose is "in part, to let claimants

12

understand the disposition of their cases, particularly in situations where a claimant knows that [her] physician has deemed [her] disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Wilson*, 378 F.3d at 544 (*quoting Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)); *see also Johnson v. Comm'r of Soc. Sec.*, 193 F. Supp. 3d 836, 846 (N.D. Ohio 2016) ("The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.") (Polster, J.)

It is well-established that administrative law judges may not make medical judgments. *See Meece v. Barnhart*, 192 Fed. App'x 456, 465 (6th Cir. 2006) ("But judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor.") (*quoting Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990)). Although an ALJ may not substitute his or her opinions for that of a physician, "an ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding." *Poe v. Comm'r of Soc. Sec.*, 342 Fed. App'x 149, 157 (6th Cir. 2009). If fully explained with appropriate citations to the record, a good reason for discounting a treating physician's opinion is a finding that it is "unsupported by sufficient clinical findings and is inconsistent with the rest of the evidence." *Conner v. Comm'r of Soc. Sec.*, 658 Fed. App'x 248, 253-254 (6th Cir. 2016) (*citing Morr v. Comm'r of Soc. Sec.*, 616 Fed. App'x 210, 211 (6th Cir. 2015)); *see also Keeler v. Comm'r of Soc. Sec.*, 511 Fed. App'x 472, 473 (6th Cir. 2013) (holding that an ALJ properly discounted the subjective evidence contained in a treating physician's opinion because it too heavily relied on the patient's complaints).

The ALJ addressed Dr. Sieben's opinions as follows:

    Regarding the claimant's severe physical impairment, the undersigned gives less

13

> weight to Dr. Sieben's repeatedly expressed medical opinions that the claimant "is unable to work at this time" because they are insufficiently supported by objective findings that are discussed in this decision (Exhs. 18F; 19F; 21F). Moreover, the undersigned gives less weight to these opinions because they concern an ultimate issue of disability, which is reserved for the Commissioner under Social Security disability law (SSR 96-5p).

(Tr. 21).

The court addresses the reasons given by the ALJ for essentially rejecting the opinions of Dr. Sieben out of order. The ALJ stated that Dr. Sieben's opinion—that Plaintiff is unable to work—was entitled to less weight because it is an opinion reserved for the Commissioner. To the extent the ALJ merely found that a statement that a claimant cannot work is not a "medical opinion" entitled to any special deference regardless of the source of the opinion, such a statement of the law is unassailable.[2] Nevertheless, while Dr. Sieben's letter from February 18, 2013 amounts to little more than an opinion that Plaintiff cannot work (Tr. 673), the same cannot be said of Dr. Sieben's assessments from February 26, 2013 and March 21, 2014. (Tr. 678-679, 783-786). These latter assessments, summarized above, contain numerous, specific opinions concerning Plaintiff's functional limitations (*e.g.*, the opinion that Plaintiff could only sit for 2 hours in an 8-hour workday). As such, the ALJ's duty to give good reasons for the weight assigned to those specific *medical opinions* remains intact.

The only other reason given for rejecting the limitations assessed by Dr. Sieben was the

---

[2] "[A] treating physician's opinion is only entitled to … special attention and deference when it is a *medical opinion*." *Turner v. Comm'r of Soc. Sec.*, 381 Fed. App'x 488, 492-493 (6th Cir. 2010) (emphasis in original); *accord Curler v. Comm'r of Soc. Sec.*, 561 Fed. App'x 464, 471 (6th Cir. 2014) ("If the treating physician instead submits an opinion on an issue reserved to the Commissioner—such as whether the claimant is disabled, unable to work, the claimant's RFC, or the application of vocational factors—his decision need only 'explain the consideration given to the treating source's opinion.'") (citations omitted); *see also* 20 C.F.R. §§ 404.1527(d), 416.927(d) ("Opinions on some issues," such as statements that a claimant is "disabled" or "unable to work," do not constitute "medical opinions as described in paragraph (a)(2) of this section.") Nevertheless, "opinions from any medical source about issues reserved to the Commissioner must never be ignored, and that the notice of the determination or decision must *explain* the consideration given to the treating source's opinion(s)." SSR 96-5p, 1996 WL 374183 (Jul. 2, 1996) (emphasis added).

ALJ's conclusory statement that "they are insufficiently supported by objective findings that are discussed in this decision."[3] (Tr. 21). Courts have routinely found that perfunctory assessments, such as this one, do not constitute "good reasons"" for rejecting a treating physician's opinion. *See, e.g., Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 245-46 (6th Cir. 2007) (finding an ALJ failed to satisfy the "good reasons" requirement where the ALJ merely stated, without explanation, that the evidence of record did not support the severity of said limitations); *accord Friend v. Comm'r of Soc. Sec.*, 375 Fed. App'x 543, 552 (6th Cir. 2010) ("Put simply, it is not enough to dismiss a treating physician's opinion as 'incompatible' with other evidence of record; there must be some effort to identify the specific discrepancies and to explain why it is the treating physician's conclusion that gets the short end of the stick."); *Patterson v. Astrue*, Case No. 5:09-cv-1566, 2010 WL 2232309 (N.D. Ohio June 2, 2010) (Vecchiarelli, M.J.) (remanding where the "ALJ did not provide any rationale beyond his conclusory statement that [the treating physician's] opinion is inconsistent with the objective medical evidence and appears to be based solely on [claimant's] subjective performance."); *Fuston v. Comm'r of Soc. Sec.*, Case No. 1:11-cv-224, 2012 WL 1413097 at *9 (S.D. Ohio Apr. 23, 2012) (finding the ALJ deprived the court of meaningful review where the ALJ discarded a treating physician's opinion "without identifying any contradictory evidence or explaining which findings were unsupported"). The portion of the decision that addressed Dr. Sieben's opinion offers only a conclusion without any *explanation* indicating how the "objective findings" allegedly undermine Dr. Sieben's opinions. In fact, the ALJ does not even identify which objective findings support the rejection of Dr. Sieben's opinion or, alternatively, explain what objective findings are absent from Plaintiff's treatment record that

---

[3] The ALJ's decision also referenced, without any comment, analysis, explanation, or page reference, three exhibits, 18F, 19F, and 21F, which encompass over one-hundred pages of Dr. Sieben's records. (Tr. 678-782, 785-786).

render Dr. Sieben's opinion "insufficiently supported." (Tr. 21).

The Commissioner's brief attempts to overcome the shortcomings in the ALJ's decision by identifying portions of the record she believes support the ALJ's conclusion. (R. 12, PageID# 1143-1472, *citing* Tr. 685, 690, 731, 742, 754, 863, 880, 914.) Courts have observed that, in the administrative agency context, "[c]ounsel's argument cannot be substituted for the reasons actually offered by the ALJ." *Williams v. Colvin*, No. 1:14-CV-02183, 2015 WL 5165458, at \*6 (N.D. Ohio Sept. 2, 2015) (White, M.J.) (citations omitted); *see also Berryhill v. Shalala*, 4 F.3d 993 (6th Cir. 1993) ("[I]in large part, an agency's decision must be affirmed on the grounds noted in the decision."); *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996). This court "may not accept appellate counsel's *post hoc* rationalizations for agency action. It is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself." *Johnson*, 193 F. Supp.3d at 847 (N.D. Ohio 2016) (Polster, J.) (noting that "the Commissioner's post hoc rationalization for discounting Dr. Smarty's opinion is contrary to the law of the Sixth Circuit."); *see also Ammons v. Comm'r of Soc. Sec.*, 936 F. Supp. 2d 860, 865 (N.D. Ohio 2013) ("The Commissioner's *post hoc* arguments on judicial review are immaterial.") (Baughman, M.J.)

In addition, the ALJ's rejection of Dr. Sieben's opinions concerning Plaintiff's functional limitations on the basis that there was insufficient support in the "objective findings" is troubling given the ALJ's explicit finding that Plaintiff suffered from fibromyalgia. (Tr. 13-15). "[T]he lack of 'objective' medical evidence is not unusual, but rather the norm in fibromyalgia cases." *Turner v. Colvin*, Case No. 1:13-cv-1916, 2014 WL 4930677 at \*15 (N.D. Ohio, Aug. 7, 2014) (White, M.J.), *adopted by* 2014 WL 49307680 (Oct. 1, 2014) (Nugent, J.); *see also Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 244 (6th Cir. 2007) (noting that "CT scans, X-rays, and minor abnormalities, noted by these doctors and cited by the Secretary as substantial evidence of no

16

disability ... are not highly relevant in diagnosing [fibromyalgia] or its severity.") (*citing Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815, 819 (6th Cir. 1988) (stating that "[t]here are no objective tests which can conclusively confirm" fibromyalgia)); *Keating v. Comm'r of Soc. Sec.*, Case No. 3:13-cv-487, 2014 WL 1238611 at * 6 (N.D. Ohio March 25, 2014) (McHargh, M.J.) ("This circuit has recognized that symptoms of fibromyalgia are often not supportable by objective medical evidence.") Because the ALJ's decision makes no meaningful effort to explain how the objective findings fail to support Dr. Sieben's opinions, it is unclear whether the ALJ was troubled by the lack of objective findings supporting the symptoms associated with fibromyalgia, or whether the ALJ believed the objective evidence contradicted the functional limitations set forth in Dr. Sieben's opinions. While the ALJ plainly credited the diagnosis of fibromyalgia, it is unclear why the limiting effects assessed by Dr. Sieben were rejected.[4]

Accordingly, the court finds the ALJ's explanation was lacking, and thereby failed to set forth "good reasons" for rejecting many of Dr. Sieben's opinions. Although "good reasons" may potentially be identified for ultimately rejecting Dr. Sieben's opinions, the ALJ was required to articulate those reasons with sufficient clarity to allow this court to conduct a meaningful appellate review. Therefore, it is recommended that the decision be vacated and this matter remanded for further consideration of Dr. Sieben's opinions.[5]

---

[4] This recommendation should not be misconstrued as suggesting that the limitations assessed by Dr. Sieben must be credited due to the finding that Plaintiff's fibromyalgia constituted a severe impairment. "Some people may have such a severe case of fibromyalgia as to be totally disabled from working, Michael Doherty & Adrian Jones, 'Fibromyalgia Syndrome (ABC of Rheumatology),' 310 British Med.J. 386 (1995); *Preston v. Secretary of Health & Human Services*, 854 F.2d 815, 818 (6th Cir.1988) (*per curiam*), but most do not and the question is whether [the claimant] is one of the minority." *Sarchet*, 78 F.3d at 307.

[5] Although the Commissioner's decision on remand may ultimately remain unchanged, the court declines to address Plaintiff's second assignment of error as premature. If the ALJ were to fully credit Dr. Seiben's opinions on remand, Plaintiff would in all likelihood be rendered unemployable. For this reason and in the interests of judicial economy, the court will not address the second alleged error.

17

### IV. Conclusion

For the foregoing reasons, it is recommended that the Commissioner's final decision be REVERSED and REMANDED for proceedings consistent with this opinion.

s/ *David A. Ruiz*
David A. Ruiz
United States Magistrate Judge

Date: March 31, 2017

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. **28 U.S.C. § 636(b)(1).** Failure to file objections within the specified time may waive the right to appeal the district court's order. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).